| | |
|---|---|
| SVETLANA SKY, individually and on behalf of all others similarly situated, <br><br>                 Plaintiff, <br> v. <br><br> DELTA AIR LINES, INC., <br><br>                 Defendant. | Case No. <br><br> **CLASS ACTION COMPLAINT** <br><br> **JURY TRIAL DEMANDED** |

Plaintiff Svetlana Sky ("Plaintiff") brings this action on behalf of herself and all others similarly situated against Defendant Delta Air Lines, Inc. ("Delta" or "Defendant"). Plaintiff makes the following allegations pursuant to the investigation of her counsel and based upon information and belief, except as to the allegations specifically pertaining to herself, which are based on her personal knowledge.

## NATURE OF THE ACTION

1. This case challenges a standardized cancellation and refund design deployed by Defendant Delta Air Lines, Inc. ("Delta") to steer purchasers of "fully refundable" airline tickets into receiving an expiring Delta e-credit rather than the contractually promised refund to the original form of payment. These purchasers paid a premium specifically for the ability to obtain a refund to the original form of payment (i.e., a credit card).

2. Delta's own tariff/contract of carriage states that fully refundable tickets will be refunded at the customer's request and that tickets purchased by credit card will be refunded to the credit card account used for purchase. Despite that promise, Delta's cancellation page loads with "Delta e-credit" preselected and places the "Refund to Original Form of Payment" option below the initial viewport such that a consumer must scroll and affirmatively override the default selection to obtain the promised credit-card refund.

3. In practice, a reasonable consumer proceeds through the cancellation flow without ever seeing the refund-to-card option and will receive an e-credit that (i) is not cash, (ii) is restricted to Delta travel, and (iii) expires. Delta thereby retains the consumer's cash until and unless the credit is used and may keep it permanently if the credit expires unused. This is even more certain when using a smaller screen, a constrained browser window, or a mobile device.

4. Defendant has profited unjustly because of its deceptive conduct. Plaintiff therefore asserts claims on behalf of herself and similarly situated purchasers for breach of contract, negligent misrepresentation, violation of New York General Business Law §§ 349 and 350, and unjust enrichment.

## JURISDICTION AND VENUE

5. This Court has subject matter jurisdiction over this action pursuant to 28 U.S.C. § 1332(d)(2)(a) because this case is a class action where the aggregate claims of all members of the proposed class are in excess of $5,000,000.00 exclusive of interest and costs, there are over 100 members of the putative class, and at least one class member is a citizen of a state different than Defendant.

6. This Court has personal jurisdiction over Defendant because a substantial portion of the events that gave rise to Plaintiff's claims occurred in New York.

7. Venue is proper in this Court pursuant to 28 U.S.C. § 1391(b)(2) because a substantial portion of the events that gave rise to Plaintiff's claims occurred in this District.

## PARTIES

8. Plaintiff Svetlana Sky is a citizen of New York who resides in Brooklyn, New York. Within the last three years, Plaintiff Sky has purchased from Delta a "fully refundable" ticket with a debit or credit card and later cancelled the ticket through Delta's online cancellation

flow.  Plaintiff relied on the "fully refundable" representation.  Plaintiff Sky understood the "fully refundable" representation to mean that, in the event that she cancelled her ticket, she would be eligible to receive the refund in form that she made the payment (i.e. a refund to her debit or credit card).  Instead, by using dark patterns, when cancelling a ticket, Defendant forced Plaintiff Sky to receive inferior "e-credits" which can be only used to purchase future Delta flights and contain a short expiration date.  Had Plaintiff Sky known that the "fully refundable" representation was misleading, she would have not purchased the ticket option or, at the very least, would have only been willing to purchase the ticket at a lesser price.

9.      Defendant Delta Air Lines, Inc. is a corporation organized under the laws of Delaware with its principal place of business located at 1030 Delta Boulevard, Atlanta, Georgia, 30354.  Defendant is a major U.S. airline company.

**GENERAL ALLEGATIONS**

**A.      Delta's Tariff/Contract Promises for Fully Refundable Tickets**

10.      Delta sells multiple fare types, including nonrefundable fares and "fully refundable" fares sold at a premium.  An example of Delta's ticket option purchase page is depicted below:

///

///

3



**"FULLY REFUNDABLE"**

11. Delta's governing contract documents include a tariff/contract of carriage that defines Delta's obligations concerning refunds and the form of refunds.

12. Delta's tariff provides, in substance, that if a ticket was purchased at a fare that is "fully refundable," Delta will issue a refund of the unused refundable portion "at [the customer's] request."

13. Delta's tariff further provides that, for eligible tickets, "[t]ickets paid for by credit card will be refunded to the credit card account used to purchase the ticket," typically within a stated period after Delta receives the refund request.

**B. Plaintiff's Purchase of a Fully Refundable Fare**

14. Plaintiff purchased a Delta ticket identified and marketed as "fully refundable," paying a substantial premium relative to the nonrefundable fare for the same or comparable itinerary.

15. Plaintiff understood that "fully refundable" meant that, in event that she cancelled her ticket, she would be unconditionally eligible to receive a refund to the original form of

4

payment.

**C.     Delta's Online Cancellation Flow Employs Dark Patterns to Force Purchasers into Receiving e-Credits Instead of Refunds**

16.     After purchase and before travel, Plaintiff canceled the ticket through Delta's website and the cancellation page presented an "e-credit & Refund Details" section.

17.     The cancellation page loads with "Delta e-credit" preselected (the e-credit radio indicator is filled/selected by default) without requiring the consumer to select either refund option.

18.     Above the fold (all you see initially even with a large monitor) the page emphasizes e-credit and does not display the "Refund to Original Form of Payment" option.

19.     Only after scrolling down below the initial viewport does the cancellation page reveal the "Refund to Original Form of Payment" option.

20.     The Federal Trade Commission (FTC) has recognized the "financial harms caused by deceptive sign up tactics [and] ongoing billing that is impossible to cancel."[1]  Included in this illegal activity is using "tricks and traps" to hide information, including cancellation options, "buried on pages beyond the initial offer page."  The FTC has also recognized that a "preselection" which is "a default that's good for the company, but not for the user" is an "asymmetric choice."[2]  This asymmetric choice constitutes an illegal dark pattern.

**D.     Defendant Masked the Refund Option**

21.     For a consumer, including Plaintiff, who purchased a fully refundable fare, the ordinary and reasonable understanding is that canceling the ticket constitutes the request to

---

[1] https://www.ftc.gov/news-events/news/press-releases/2021/10/ftc-ramp-enforcement-against-illegal-dark-patterns-trick-or-trap-consumers-subscriptions
[2] https://www.ftc.gov/system/files/ftc_gov/pdf/P214800%20Dark%20Patterns%20Report%209.14.2022%20-%20FINAL.pdf

refund the unused refundable portion – nothing more is required to refund the full purchase price to the original form of payment.

22. Delta drafted the tariff language and controls the cancellation process. If Delta intended that a consumer must take an additional affirmative step—hidden below the fold and contrary to the default selection—to transform a cancellation into a "refund request," Delta was required to disclose that requirement clearly and prominently at the point of cancellation and in the contract terms.

23. Clicking "Cancel" for a fully refundable ticket constitutes the tariff "refund request," and that Delta's default issuance of an expiring e-credit absent an informed, affirmative election is inconsistent with Delta's contractual promise that credit-card purchases will be refunded to the original card upon request.

**E.      Delta Admits that e-Credits Are Not Economically Equivalent to Refunds to Original Form of Payment**

24. After cancellation, Delta sends a cancellation confirmation email.

25. When the consumer receives a refund to original form of payment, Delta's email states, in substance, that the credit card used to purchase the ticket has been credited.

26. When the consumer receives an e-credit, Delta's email states, in substance, that an e-credit has been issued.

27. Delta's own published materials demonstrate that Delta, like the Plaintiff, values statement-credit-type benefits materially differently than Delta travel voucher/e-credit-type instruments, that is,  Delta recognizes a substantial economic difference between cash-equivalent credits and carrier-limited travel credits.  In fact, Delta values a cash refund at twice – 2x – the value of an e-credit on its own platform.

6

28. This valuation differential is also confirmed (and unavoidable) because Delta provides that e-credits expire one year after issuance. In contrast, a refund to the original form of payment is wholly owned and controlled by Plaintiff and other Delta customers actually receiving such a refund.

29. Morevoer, Delta has the use of Plaintiff's and class members' money until e-credits are redeemed or they expire. An e-credit is initially shown on Delta's financial statements as cash (on the asset side of its balance sheet) and a liability (on the right side of the balance sheet) but the liability disappears after one year if not redeemed and the cash is booked as revenue, at Plaintiff's expense despite her paying for a fully refundable ticket.

30. This confirms that (i) the outcome is controlled by the cancellation flow selection, (ii) the selection is economically material, and (iii) the preselected e-credit and buried refund-to-card option predictably drive consumers to the less valuable outcome absent careful scrolling and override, all to Delta's benefit and at Plaintiff's unintended expense.

31. 43. Defendant's misleading and deceptive practices proximately caused harm to Plaintiff and the proposed class members who suffered an injury in fact and lost money or property as a result of Defendant's deceptive conduct

## CLASS ACTION ALLEGATIONS

32. Plaintiff seeks to represent a class defined as all persons in the United States who, during the applicable statute of limitations period, purchased a "fully refundable" ticket and, upon cancellation, received e-credits instead of a full refund to the original form of payment (the "Class").

33. Plaintiff seeks to represent a subclass defined as all Class members who reside in New York who purchased a "fully refundable" ticket and, upon cancellation, received e-credits

(the "New York Subclass") (collectively with the Class, the "Classes").

34. Members of the Classes are so numerous that their individual joinder herein is impracticable. On information and belief, members of the Class number in the hundreds of thousands. The precise number of Class members and their identities are unknown to Plaintiff at this time but may be determined through discovery. Class members may be notified of the pendency of this action by mail and/or publication through the distribution records of Defendant.

35. Common questions of law and fact exist as to all Class members and predominate over questions affecting only individual Class members. Common legal and factual questions include, but are not limited to, the nature of Defendant's ticketing practices; whether Defendant's ticketing practices constitutes a breach of contract; whether the marketing of the "fully refundable" tickets are deceptive; whether Plaintiff and the members of the Classes have suffered damages as a result of Defendant's actions and the amount thereof; and whether Plaintiff and the members of the Classes are entitled to attorneys' fees and costs.

36. The claims of the named Plaintiff are typical of the claims of the Class in that the named Plaintiff was exposed to Defendant's false and misleading marketing, purchased a "fully refundable" ticket, and suffered a loss as a result when receiving e-credits instead of refund in the form of original payment.

37. Plaintiff is an adequate representative of the Classes because her interests do not conflict with the interests of the Class members she seeks to represent, she has retained competent counsel experienced in prosecuting class actions, and she intends to prosecute this action vigorously. The interests of Class members will be fairly and adequately protected by Plaintiff and her counsel.

38. The class mechanism is superior to other available means for the fair and efficient

8

adjudication of the claims of Class members. Each individual Class member may lack the resources to undergo the burden and expense of individual prosecution of the complex and extensive litigation necessary to establish Defendant's liability. Individualized litigation increases the delay and expense to all parties and multiplies the burden on the judicial system presented by the complex legal and factual issues of this case. Individualized litigation also presents a potential for inconsistent or contradictory judgments. In contrast, the class action device presents far fewer management difficulties and provides the benefits of single adjudication, economy of scale, and comprehensive supervision by a single court on the issue of Defendant's liability. Class treatment of the liability issues will ensure that all claims and claimants are before this Court for consistent adjudication of the liability issues.

## **CAUSES OF ACTION**

### **CLAIM I**
**Breach of Contract Including the Covenant of Good Faith and Fair Dealing**
**(On behalf of the Class and New York Subclass)**

39.     Plaintiff incorporates by reference and re-alleges herein all paragraphs alleged above.

40.     Plaintiff bring this claim on behalf of herself and the Class and New York Subclass (together the "Classes").

41.     Plaintiff and all members of the Classes have contracted with Defendant by buying a "fully refundable" ticket and by canceling in accordance with Delta's procedures.

42.     By representing that the ticket will be "fully refundable," Defendant promised that Plaintiff and members of the Classes would be eligible to receive a refund in the form of original payment, upon cancellation. Plaintiff and members of the Classes paid a premium for this option.

43.     Under the terms of the tariff, for fully refundable tickets paid by credit card, Delta promised to refund to the original credit card upon the customer's request.

44.     Delta breached its promises by implementing a cancellation workflow that defaults the consumer into e-credit, an expiring, non-cash instrument, unless the consumer scrolls below the fold and affirmatively overrides the preselected e-credit, thereby denying the contractual form-of-refund promised.

45.     Plaintiff and the Class were damaged, including by paying a premium for refundability and being deprived of the contractually promised refund-to-card benefit, suffering time-value loss and exposure to breakage risk.

46.     In addition (and in the alternative), there exists an implied covenant of good faith and fair dealing in all contracts that neither party shall do anything which will have the effect of destroying or injuring the right of the party to receive the fruits of the contract.  Good faith and fair dealing, in connection with executing contracts and discharging performance and other duties according to their terms, means preserving the spirit – not merely the letter – of the bargain.  Put differently, the parties to a contract are mutually obligated to comply with the substance of their contract in addition to its form.  Evading the spirit of the bargain and abusing the power to specify terms constitute examples of bad faith in the performance of contracts

47.     Subterfuge and evasion violate the obligation of good faith in performance even when an actor believes their conduct to be justified.  Bad faith may be overt or may consist of inaction, and fair dealing may require more than honesty.  Examples of bad faith are evasion of the spirit of the bargain, willful rendering of imperfect performance, abuse of a power to specify terms, and interference or failure to cooperate in the other party's performance

48.     The contract obligated Delta to act in good faith and not to do anything that would

10

unfairly interfere with Plaintiff's right to receive the benefits of the agreement.

49. Delta, in bad faith, unfairly interfered with the principal benefit of a "fully refundable" fare (refund to the original form of payment) by designing the cancellation flow to preselect e-credit, conceal the refund-to-card option below the fold and as otherwise set forth herein.

50. Delta's conduct deprived Plaintiff of the benefit of the bargain and caused damages.

**CLAIM II**
**Violation of the New York General Business Law ("GBL") § 349**
**(On behalf of the New York Subclass)**

51. Plaintiff incorporates by reference and re-alleges herein all paragraphs alleged above.

52. Plaintiff brings this cause of action on behalf of himself and members of the New York Subclass against Defendant.

53. Plaintiff and New York Subclass members are "persons" within the meaning of the GBL § 349(h).

54. Defendant is a "person, firm, corporation or association or agent or employee thereof" within the meaning of GBL § 349(b).

55. Under GBL § 349, "[d]eceptive acts or practices in the conduct of any business, trade or commerce are unlawful."

56. 75. By the acts and conduct alleged herein, Defendant committed unfair or deceptive acts and practices by promising a "fully refundable" ticket for an additional price but deceptively forces Plaintiff and members of the New York Subclass to accept e-credits, which

11

expire and have no cash value.

57. In doing so, Defendant engaged in deceptive acts or practices in violation of GBL § 349.

58. Defendant's deceptive acts or practices were materially misleading. Defendant's conduct was likely to and did deceive reasonable consumers, including Plaintiff, about the quality of its "fully refundable" ticket, as discussed throughout.

59. Plaintiff and New York Subclass members were unaware of, and lacked a reasonable means of discovering, the material facts (that they would be forced to accept e-credits instead of a refund to original form of payment) that Defendant withheld.

60. Defendant's actions set forth above occurred in the conduct of trade or commerce.

61. The foregoing deceptive acts and practices were directed at consumers.

62. Defendant's misleading conduct concerns airline tickets, widely purchased consumer products, and affects the public interest. Defendant's conduct includes unfair and misleading acts or practices that have the capacity to deceive consumers and are harmful to the public at large. Defendant's conduct is misleading in a material way because it fundamentally misrepresents the "fully refundable" nature of the tickets.

63. Plaintiff and New York Subclass members suffered ascertainable loss as a direct and proximate result of Defendant's GBL violations in that (a) they would not have purchased the "fully refundable" tickets had they known the truth, and (b) they overpaid for the "fully refundable" tickets on account of the misrepresentation, as described herein.

64. On behalf of herself and other members of the New York Subclass, Plaintiff seeks to enjoin Defendant's unlawful acts and practices described herein, to recover her actual damages or $50, whichever is greater, reasonable attorney's fees and costs, and any other just

12

and proper relief available under GBL § 349.

**CLAIM III**
**Violation of the New York General Business Law § 350**
**(On behalf of the New York Subclass)**

65. Plaintiff incorporates by reference and re-alleges herein all paragraphs alleged above.

66. Plaintiff brings this claim individually and on behalf of the members of the New York Subclass against Defendant.

67. GBL § 350 provides that "[f]alse advertising in the conduct of any business, trade or commerce or in the furnishing of any service in this state is hereby declared unlawful."

68. Defendant's labeling and advertisement of the "fully refundable" tickets was false and misleading in a material way. Specifically, Defendant advertised the tickets as being "fully refundable" when in fact they forced consumers into receiving inferior e-credits.

69. Plaintiff and reasonable consumers understand Defendant's misrepresentations to mean that "fully refundable" means that consumers would receive a refund in the form of original payment upon cancellation.

70. This misrepresentation was consumer-oriented and was likely to mislead a reasonable consumer acting reasonably under the circumstances.

71. This misrepresentation has resulted in consumer injury or harm to the public interest.

72. As a result of this misrepresentation, Plaintiff and New York Subclass members have suffered economic injury because (a) they would not have purchased the "fully refundable" tickets had they known the truth, and (b) they overpaid for the "fully refundable" tickets on

13

account of the "fully refundable" misrepresentation, as described herein.

73. By reason of the foregoing and as a result of Defendant's conduct, Plaintiff and New York Subclass members seek to enjoin the unlawful acts and practices described herein, to recover their actual damages or five hundred dollars, whichever is greater, three times actual damages, reasonable attorneys' fees and costs, and any other just and proper relief available under GBL § 350.

**CLAIM IV**
**Negligent Misrepresentation**
**(On behalf of the Class and the New York Subclass)**

74. Plaintiff incorporates by reference and re-alleges each and every allegation set forth above as though fully set forth herein.

75. Plaintiff brings this claim on behalf of the Classes.

76. Plaintiff and Defendant shared a special or privity-like relationship because Defendant is a sophisticated corporate airline who entered into an agreement with Plaintiff. Defendant thus had a duty to impart correct information to Plaintiff and the members of the Classes regarding their right and obligations relating to the agreement.

77. Delta represented, expressly and by design, that the cancellation flow fairly presented refund options for a "fully refundable fare" consistent with its contractual promise.

78. The information imparted upon Plaintiff and the members of the Classes was incorrect because they were forced to receive inferior, non-cash e-credits instead of a refund in the form of original payment.

79. Delta lacked reasonable grounds for that representation because it preselected e-credit and concealed refund-to-card below the fold, predictably causing consumers to accept the less valuable option.

80. Delta intended consumers to rely on the cancellation flow's presentation.

81. Plaintiff reasonably relied and suffered damages. But for Defendant's misrepresentations, Plaintiff and members of the Classes would not have entered into contract with Defendant.

**CLAIM V**
**Unjust Enrichment**
**(On behalf of the Class and the New York Subclass)**

82. Plaintiff incorporates by reference and re-alleges herein all paragraphs alleged above.

83. Plaintiff brings this claim individually and on behalf of members of the Class against Defendant.

84. Plaintiff and Class members conferred benefits on Defendant by paying money to Defendant for the upgraded purchase of the "fully refundable" tickets.

85. Defendant has knowledge of such benefits.

86. Defendant has been unjustly enriched in retaining the revenues derived from Plaintiff's and Class members' purchase of the "fully refundable" tickets. Retention of those moneys under these circumstances is unjust and inequitable because Defendant misrepresented that the Products were "fully refundable" when in fact they forced Plaintiff and members of the classes to accept inferior, non-cash e-credits instead of a refund in the form of original payment.

87. Because Defendant's retention of the non-gratuitous benefits conferred on it by Plaintiff and Class members is unjust and inequitable, Defendant must pay restitution to Plaintiff and the Class members as ordered by the Court.

## PRAYER FOR RELIEF

WHEREFORE Plaintiff, individually and on behalf of all others similarly situated, seeks

judgment against Defendant, as follows:

(a) For an order certifying the Class and New York Subclass under Rule 23 of the Federal Rules of Civil Procedure, naming Plaintiff as representative of the Class and New York Subclass, and naming Plaintiff's attorneys as Class Counsel to represent the Class and New York Subclass;

(b) For an order finding in favor of Plaintiff and the Classes on all counts asserted herein;

(c) For compensatory and statutory damages in amounts to be determined by the Court and/or jury;

(d) For prejudgment interest on all amounts awarded;

(e) For an order of restitution and all other forms of equitable monetary relief;

(f) For an order enjoining Defendant from continuing the illegal practices detailed herein and compelling Defendant to undertake a corrective advertising campaign; and

(g) For an order awarding reasonable attorneys' fees and expenses and costs of suit.

## DEMAND FOR TRIAL BY JURY

Pursuant to Federal Rule of Civil Procedure 38(b), Plaintiff demands a trial by jury of any

and all issues in this action so triable as of right.


Dated: May 1, 2026
Respectfully submitted,


**BURSOR & FISHER, P.A.**

By: _/s/ Joseph I. Marchese_
Joseph I. Marchese

Joseph I. Marchese
Israel Rosenberg
1330 Avenue of the Americas, 32nd Floor
New York, New York 10019
Telephone: (646) 837-7150
Facsimile: (212) 989-9163
E-Mail: jmarchese@bursor.com
irosenberg@bursor.com